# United States District Court

FILED
AUG 22 2006
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ...

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

Units #178 and #232 at U-Stor It Mini Storage, 4141 Troy Highway, Montgomery, Alabama

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 2:06mj85-SRW

I, __Neill Thompson__ being duly sworn depose and say:

I am a(n) __Special Agent__ and have reason to believe that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Units #178 and #232 at U-Stor It Mini Storage, 4141 Troy Highway, Montgomery, Alabama

in the _____Middle_____ District of _____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

SEE AFFIDAVIT

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

**property that constitutes evidence of the commission of a criminal offense, contraband, and property that has been used as a means of committing a criminal offense**

concerning violations of Title 21 United States Code, Sections 841(a)(1) & 846 .

The facts to support the issuance of a Search Warrant are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof:     ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

August 15, 2006                                          at    Montgomery, Alabama
Date                                                               City and State

Susan Russ Walker, U.S. Magistrate Judge          _____
Name and Title of Judicial Officer                        Signature of Judicial Officer

<u>A F F I D A V I T</u>

I, Neill Thompson, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:

This affidavit, which is based upon personal knowledge and knowledge obtained from other law enforcement officers, is submitted in support of an application for warrants to search the following properties and persons:

Units # 178 and # 232 at U-Stor It Mini Storage, 4141 Troy Highway, Montgomery, Alabama

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

2. Since June 1998 I have been so employed as a Special Agent of the Drug Enforcement Administration (DEA). Prior to that time I was employed as a Police Officer with the Tuscaloosa, Alabama Police Department for approximately 12 years. I have participated in investigations involving organized crime and narcotics activities. I have received specialized training in identifying and investigating narcotics distribution enterprises and their related criminal activities, including monetary and asset laundering. I have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or poly-drug conspiracies. I have also written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books and proceeds derived as a result of this illegal activity. Presently, I am assigned to the DEA office in Montgomery, Alabama.

3. Over the past eighteen months, and on a consistent basis, agents assigned to the Montgomery DEA Office and to the Montgomery Police Department Special Operations Unit (a specialized unit tasked with enforcing narcotics violations) have received information regarding Santo COLEMAN and his ongoing illegal drug trafficking activity. I personally have received information from several reliable confidential sources who state that COLEMAN is a multi-kilogram cocaine distributor, and also distributes large quantities of marijuana (hundreds of pounds) in the Montgomery area.

4. On August 8, 2006 the Montgomery DEA Office was contacted after a Hispanic male was stopped on Interstate 65 and found to be in possession of three kilograms of cocaine. The Hispanic male, Alberto VILLAREAL, agreed to cooperate with law enforcement in furthering the investigation by assisting in a "controlled delivery" of the cocaine. VILLAREAL made recorded telephone calls with and met COLEMAN and Harry Edward JONES in Montgomery. When officers attempted to execute an arrest on COLEMAN and JONES, they fled in a 2006 Chevrolet pickup truck. COLEMAN'S truck was involved in a collision and COLEMAN and JONES fled on

foot. COLEMAN was not found, but approximately two hours later JONES was found with the aid of a canine.

5. JONES had in his possession approximately one half ounce of marijuana, approximately $5,200.00 cash, a set of keys, a cellular telephone, and a card from Electronic Security Services with an account number listed. I interviewed JONES and he was very evasive as to the source of the cash. He said that he had been saving it from cutting grass. I asked JONES where he lived and he said that he lived at 2543 Westwood Drive, Montgomery, Alabama (the address listed on his driver's license). I asked JONES if the house key on his key ring went to the house at 2543 Westwood Drive and he said that it did not, that he did not know where the key went, and that he did not have a key to the house at 2543 Westwood Drive. Two of the keys on JONES' key ring had "Homesafe" printed on them and I asked JONES where the safe (or safes) were. JONES was very evasive again and did not answer.

6. On August 9, 2006 I caused an Administrative Subpoena to be issued to Electronic Security Services (ESS) requesting that they provide the subscriber information for account number1640. ESS responded with the requested information, which stated that Harry JONES was the listed subscriber on the opened account at 3436 Country Church Road (the residence), and further that the account showed activity as late as August 7, 2006. (Since that time, ESS has provided additional information showing activity at the residence as late as August 11, 2006)

7. On August 9, 2006 I also caused an Administrative Subpoena to be issued to Alabama Power Company requesting that they provide current subscriber information for the residence. Alabama Power Company responded with the requested information, which stated that Harry JONES was the billed subscriber

8. On August 11, 2006 a reliable confidential source (CS) advised that he/she overheard other individuals talking about JONES' arrest and that these individuals stated that JONES was living in a house in east Montgomery with his girlfriend and that he had cocaine and money "stashed" at the house.

9. On August 14, 2006 Task Force Officer (TFO) Joe Herman interviewed VILLAREAL regarding JONES. VILLAREAL said that about two weeks prior to August 8, 2006, he came to Montgomery and met COLEMAN and JONES. He said that COLEMAN drove around Montgomery and they talked about the anticipated "load" of cocaine. VILLAREAL said that they stopped at one house in Montgomery and described it as a two-story wood frame house with a driveway and wooden fence on the side, and on a corner lot. VILLAREAL said that COLEMAN and JONES went inside the residence for about five minutes and came back outside, and that he was not invited inside. The description VILLAREAL provided is consistent with the residence.

10. On August 15, 2006, I obtained a warrant authorizing the search of the residence located at 3436 Country Church Road, Montgomery, Alabama. The warrant was

2

executed and miscellaneous documents were found including a receipt for a storage unit in JONES' name located at U-Stor It Mini Storage at 4141 Troy Highway, Montgomery, Alabama. Later that same date I caused an Administrative Subpoena to be issued to the management at U-Stor It Mini Storage. Mr. Masters responded with the requested information. JONES currently has two storage units in his name, units 178 and 232.

11. Based on my training and experience, I know it is common for drug distributors to utilize storage units to "stash" illegal drugs and to conceal the proceeds derived from the sale of illegal drugs and other evidence pertaining to drug distribution.

Based on my training and experience, previously recited, and my participation in numerous investigations involving narcotics importation and distribution organizations and in financial investigations involving large amounts of controlled substances, currency and other monetary instruments, I am aware of the following;

    a. that large-scale narcotics traffickers commonly maintain on hand large amounts of U.S. Currency in order to maintain and finance their ongoing narcotics business;

    b. that individuals engaged in narcotics trafficking and/or money laundering commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other paper relating to the illegal distribution of controlled substances; that these same individuals commonly "front" (provide on consignment) narcotics to their clients; that the aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are maintained where the narcotics traffickers have ready access to them;

    c. narcotics traffickers and those engaged in the laundering of money commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization;

    d. that, in order to accomplish this concealment, narcotics traffickers frequently build "stash" places within their residences or businesses. That there are a number of publications available instructing where and how to build "stash" places. Copies of these types of publications have been found in the residences and businesses of narcotics traffickers;

    e. that it is common for persons involved in large-scale narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letter of credit, money orders, bank drafts, cashiers checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and control over;

f. that large scale narcotics traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described above

g. that the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

h. that narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses.

i. Drug traffickers commonly maintain in their wallet, purse or pockets, telephone numbers of drug associates, safe deposit box keys, cash receipts of expenditures or other documents such as business cards, providing leads to the disposition of drug proceeds. Therefore, it is requested that all aforementioned persons be searched for evidence of drug trafficking.

j. Drug traffickers are also known to use their vehicles to transport drugs, store drug proceeds and store records relating to their drug activities, such as gasoline tickets revealing out of town trips. Therefore, it is requested that all vehicles on the aforementioned premises be searched for evidence of drug trafficking.

k. That as an experienced agent, your affiant states that controlled substances can be sold in various quantities which could be small in size. Your affidavit states that because these items are very small, they can easily be hidden on one's person, on one's residence in closed or locked containers, such as file cabinets, safes, vaults, drawers, luggage, briefcases, valises, boxes, cans, bags, purses, and any other closed or locked hiding places. Drug dealers conceal their narcotics in these places as previously described in order to prevent drug "rip-offs" by drug dealers and users and in order to avoid detection and seizure by law enforcement officers.

l. That it has been your affiant's experience that such items as utility bills, and/or rent receipts are essential in the investigation of narcotics violations in that they tend to establish control of the residence.

m. That it has also been your affiant's experience that persons who deal in controlled substances will quite often "front" drugs to buyers and keep records of these in

order to keep track of who owes what. These records are commonly referred to as "totes" or "ledgers" and will quite often be found in one's residence and on one's person. Records of this nature are important to the investigation in that they tend to show the intent of the person in possession of these drugs.

 n. That it has been your affiant's experience in searching numerous residences for drug violations that it is not uncommon to find such items as scales and/or plastic baggies and/or cigarette rolling papers or other drug paraphernalia, and that these items are essential in the investigations of drug violations in that they tend to establish the intent of possession for sale.

 o. That it has also been your affiant's experience that drug manufacturers and traffickers commonly have in their possession, that is on their person, at their residence, and/or their businesses, firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure drug trafficker's property or enterprise.

 p. That it has also been your affiant's experience during numerous searches of residences and persons trafficking in controlled substances, that your affiant and other law enforcement agents have on numerous occasions found photographs and videotapes of the residents of said properties and their associates who were involved with them in criminal activities. Drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their property, and their product and that these traffickers usually maintain these photos and tapes in their possession.

 q. That it has also been your affiant's experience that drug traffickers often purchase and/or title assets in fictitious names, aliases, or in the names of their relatives, associates or business entities, to avoid detection and seizure of these assets by government agencies. Also, that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

 r. That it has also been your affiant's experience that it is common for drug traffickers to use cellular telephones because they are portable and often more difficult to investigate.

Based upon the above described facts, information, observations, and training I believe that probable cause exists for the issuance of a search warrant for Units # 178 and # 232 at U-Stor It Mini Storage, 4141 Troy Highway, Montgomery, Alabama . I believe that a search of said properties will reveal evidence relating to the Conspiracy to Distribute a Controlled Substance, the Distribution of a Controlled Substance, and Possession With the Intent to Distribute a Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

_____
Neill Thompson
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me this /5th day of August, 2006, by Neill Thompson, Special Agent, Drug Enforcement Administration.

_____
UNITED STATES MAGISTRATE JUDGE

6